United States Securities and Exchange Commission v. Marcus. Good morning, Your Honors. May it please the Court. My name is Jim Mitchell, along with my colleague, Brad Grishel. We are here on behalf of the appellants known as the Marcus Claimants. My clients consist of one individual in a series of trusts, all of whom were the victims of a fraud perpetrated by two people called Alberto Galar and Gary Tanaka, now over two decades ago. Since then, the Marcus Claimants and other victims of that fraud have had returned to them the principal amount that they invested in the fraud, along with an inflation adjustment. However, this is the rarest of frauds. Even after the defrauded investors have received their investments back, there remain profits from the fraud. We come before the Court because the Court below erred in concluding that it lacked the authority to distribute to the Marcus Claimants any of those remaining profits. In fact, the District Court decided to distribute the entire profit amount, $8.7 million, to the SEC, even though the Commission below was only seeking a prorated distribution of that fund. Now, it's well established that the District Courts maintain broad equitable discretion to fashion remedies for securities law violations. This includes, of course, determining how to distribute assets recovered from fraudulent conduct. Importantly, the Supreme Court has made clear that in exercising that discretion, the District Court must make that decision or those decisions on a case-by-case basis. Respectfully, Your Honors, the uniqueness of this case is just what the Supreme Court was talking about. Unfortunately, the Court below viewed its discretion to distribute those surplus profits to the victims as limited, because the wrongdoers here had already disgorged what they took from the victims. Specifically, the District Court, in the opinion we're appealing from on September 17th, 2024, found that it, quote, had no clear legal basis, end quote, to make further distributions to investors beyond the principle and inflation adjustments they had already received. The District Court reasoned that doing so would be the equivalent of expanding that disgorgement remedy beyond what its appropriate scope was of depriving the wrongdoers of their gains. Now, it is telling, Your Honor, that in the Court below, the Securities and Exchange Commission did not even ask the Court to do what it did, award that entire amount of $8.7 million. Well, let's assume the District Court had the discretion to do what your clients wish it had done. Would it be an abusive discretion to decline to do that? To decline to give our clients any of the funds. Our view, Your Honor, is that the Court erred in actually saying it didn't have the authority to do that. So your entire argument hinges on the conclusion that the District Court believed it didn't have equitable discretion that it had. Yes. There's been many, there's a history of this case, Your Honor, of multiple distributions of the actual investment amounts, over four distributions. And throughout those distributions, in some of the opinions some cited in our brief, the judge below actually indicated that if we actually got to this situation where there was a surplus, he would consider if it was appropriate to give it to the investors. And when we got to the actual circumstance where it happened, he said, I'm not going to be able to do that because that would be somehow against the discordant remedy. So our view is if we went back to the judge and he realized that he had authority to do that, that he would reconsider those circumstances and, frankly, give us an award in some form. Did the district judge, I'm sorry, did the government change its position, not the government, the SEC change its position on that point prior to Judge Sullivan ruling? If I understand Your Honor's question, the court below, in the court below, the SEC said, we understand. The SEC said we could give it to you. The SEC said you could give it all to the investors, but we want, we, the SEC, would like to do a prorated distribution that includes the claimants and the SEC. That's not what, and then Judge Sullivan basically gave everything to the SEC, and now the SEC is here arguing that that was a fair and, you know, appropriate use of his discretion, even though they never asked for it below. In that opinion, Your Honor, on September 17th of 2024, the court below noted the absence of precedent regarding what to do with the leftover profits from that fraudulent scheme, and concluded, as I said before, that it could not expand that disgorgement remedy by distributing funds to the SEC.   But that was the error. The absence of precedent, Your Honor, here, Your Honors, I should say, results not from the fact that it's not accurate, but that this is just such a rare occurrence that there really is no case law along the issue of where a fraud like this actually made money. And quite the contrary to the court lacking authority to distribute the money, this is a case that cries out for the court to exercise its equitable distribution discretion, I should say, and figure out what to do when the fraud actually made money and the money was money earned on the investor's money itself. Now, in the court below, beyond the error that involved recognizing the ability to distribute the surplus to the Marcus claimants, the court also wrongly determined that it would be inappropriate to distinguish between the classes of investors that were part of this fraud. Now, the Marcus claimants were among investors who invested in something called the ATGF, the Amerindos Technology Growth Fund, while other claimants invested in something called GFRDA, the Guaranteed Fixed Rate Deposit Accounts. Now, as those names suggest, there were significant differences between the two types of investors. The ATGF investors, which are our clients, invested in what they thought was basically an equity mutual fund, something that would go up and down based on the market. The other investors basically invested in a conservative vehicle that would give them a guaranteed rate of return, effectively a bond. And what happened is everybody got their money back that they put on the principal but what Judge Sullivan did below, despite his opinion, it is well established that the circuit, in this circuit, that courts may treat differently situated claimants, such as the Marcus claimants and the ones who invested in what I'll call the bond type investment, where there is a reasonable basis to do so. But in his opinion below, the judge relied on a case called SEC v. Walsh, out of this circuit from 2013, to say that he reached the conclusion that there should not be any differential treatment between the investors, largely on the theory that, well, they all invested in a fraud anyway. Well, and all the funds were commingled. And both sets of investors took on some degree of risk. The GFRD investors wanted a guaranteed return, less risk, but their supposed investments were also going to expose them to risk. And he just said he did not see a basis, and maybe you could distinguish, but he didn't see a basis for distinguishing a compelling reason in that circumstance to distinguish among them. To Your Honor's point, I think that what Judge Sullivan was talking about, and he did it quite a bit in the prior decisions, was to say while we're returning the money to the investors that they put into the fraud, I don't see a distinction between it because they all invested in a fraud. But the problem and the issue that we got to was when there actually was money beyond everybody getting their money back was an inflation adjustment, what to do with it. And in that instance, our position is that there was a significant difference between the types of investors because the bond type investors, they got it back. They got their money back. They got their interest back. Our clients put their money at risk at the market of going up or going down. And if it had gone down, then they would have lost money. Ironically, in a very strange situation, the market went up here in some of the investments that they made, so our clients took that risk. So they should be situated differently than the ones who didn't take that risk. And Judge Sullivan failed to recognize that. Although previously, as I say, in some of his earlier decisions, I'll just read it for the Court, and I know my time is up.  I'm not going to find it in my notes, but basically he had realized that if it got to this stage, he could rationalize or think about the prospect of treating the two investors differently. Yes, I recall that from your briefing. Okay, thank you. Thank you. We'll hear from the SEC. May it please the Court. Emily Truparisi for the Securities and Exchange Commission. The District Court's order on appeal reflects a fair and reasonable exercise of its broad equitable discretion to fashion a remedy for defendant securities violations, and it should be affirmed. The arguments on appeal by the Marcus claimants present arguments for why the District Court could have exercised his discretion differently, but ultimately they failed to establish that the conclusions the District Court drew were an abuse of discretion. Well, the crux of their argument seems to be that the problem is that Judge Sullivan mistakenly thought he lacked discretion, that he in fact had, and that that is an abusive – it was a legal mistake, and so an abuse of discretion. How do we know that's not the case? Yes, Your Honor. I don't think that's a fair way to read the opinion. I think what the Court was saying, and that's a – the discussion of the authority is on SPA 6, the Court's opinion, is just that there's no clear precedent for what to do in this situation. I think all parties agree with that. As counsel said, this is a rare situation where we're giving the money back. And so he was just recognizing what the parties had put forth before him, which was there's no clear guidance as what to do here. But the fact that there's no clear precedent doesn't mean he thought he was – you know, there was some misunderstanding of the scope of his authority. And I think it's important to know that it's very clear from the rest of the opinion, if you situate his statements in context, that he was exercising his discretion to give this money to the commission. And if – I think I would point the Court to three specific places, page 7, 10, and 11 of the special appendix, especially page 7, because there he says there is no good reason to dole out extra payments to investors who've already been repaid. That no good reason language doesn't sound in – I can't do it. It's that there's no good reason to do it. And also on that page, he says there's no basis for it either through the equitable receivership or through disgorgement. So, again, even if there was some – Or through disgorgement. Or through disgorgement. So even if there was some confusion or conflation of the authority, it's clear that under either approach, this is the choice he was making in exercising his discretion. So that's at page 7 of the appendix. And then, again, if you look at page 10 and 11, there's more discretionary language there. Well, that sounds like more like I don't have the authority rather than there's no good reason. Literally on that page 7, he says there's no good reason. And then, again, at page 10 and 11, he says the court remains convinced that it has properly exercised its broad equitable discretion. And then, again, at page 11, I've fully considered the arguments, this meaning the arguments that the Marcus claimants have made here today and that made before the district court, and in its discretion, I decline to depart from the remedial course. So I think it's clear from that language, again, at page 7, 10, and 11, that this was the district court acting in its broad equitable discretion to fashion a fair approach. The approach the district court took was fair and reasonable. There could have been other approaches within its discretion. But the Marcus claimants have failed to show that there was an abuse of discretion here. And that goes as well for the failure to differentiate between the different classes of investors. Again, that the court could have, perhaps, does not show an abuse of discretion here, given the extensive record of commingling and the fact that there were illusory promises made to both sets of investors. There was no abuse of discretion for the court to treat the groups of investors the same in this case. Unless the court has any further questions, we would rest on our briefs and would request that this court affirm the district court and dismiss the 2017 appeals for discretional briefs for file. Thank you. Thank you, Your Honor. Thank you. Your Honor, I will be very brief. I just want to address the issue of what Judge Sullivan said with respect to what authority he did or did not have. And here I'm reading from Special Appendix page 6, quote, but a further distribution of surplus funds would be the equivalent of ordering the disgorgement of additional funds beyond defendants' already fixed disgorgement obligations, which the defendants have fully satisfied. And then he cites the docket number, but then he says, the court is aware of no authority, nor do the parties provide any, that would permit such a retroactive expansion of the defendants' disgorgement obligations. I don't think it could be any clearer that the judge said, I'm not permitted to do this, where he actually is permitted to do it. Indeed, the SEC said he could do it in the court below, and then he gave them a windfall that, in our view, they're not entitled to. Thank you. Thank you both. Nicely argued. And we will take the matter under advisement. Thank you, judges.